[845 NYS2d 803]

In the Matter of N. STEPHEN SUKHDEO (Admitted as NARESH STEPHEN SUKHDEO), a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, November 7, 2007

## APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Gloria J. Anderson* of counsel), for petitioner.

*Richard E. Grayson,* White Plains, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondent with a petition dated April 28, 2006, containing 18 charges of professional misconduct. After a hearing on November 29, 2006, the Special Referee sustained all 18 charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline as the court deems just and proper. The respondent cross-moves to disaffirm the Special Referee's report and dismiss the charges and, if the court decides to impose public discipline in this matter, to limit any sanction to a public censure.

Charges one through seventeen of the petition are escrow related.

Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

On November 7, 2003, the sum of $273,239.83 was wired into the respondent's escrow account at North Fork Bank from Flagstar Bank in connection with the Montalvo real estate matter. The bank assessed a $15 wire fee. The respondent was required to retain that balance until the Montalvo closing.

On November 12, 2003, before the Montalvo closing, the balance fell below the amount the respondent was required to be holding in connection with that matter. The balance fell below zero.

On November 13, 2003, the bank paid two checks totaling $209,586.24 related to the Montalvo matter. These checks were drawn against funds wired into the escrow account for another matter.

Charge two alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

On November 18, 2003, the sum of $278,460.21 was wired into the escrow account from Flagstar Bank in connection with the Malave real estate matter. The bank assessed a $15 wire fee.

From November 19, 2003, through November 21, 2003, the bank paid checks totaling $36,800.78 relating to the Malave matter. The respondent was required to maintain the balance of $241,644.43 until the matter closed. On November 21, 2003, before the Malave closing, the balance in the respondent's escrow account relating to that matter fell below zero.

On November 26, 2003, the respondent's escrow check number 7388 in the amount of $231,461.41 was presented to the bank for payment in connection with the Malave matter and was returned due to insufficient funds.

The check was re-presented and paid by the bank on December 2, 2003. It was drawn against funds which had been deposited in connection with several other matters.

Charge three alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

At the close of business on September 11, 2002, the balance on deposit in the respondent's escrow account was $68,649.39. On September 12, 2002, a check in the amount of $81,383.50 in connection with the De Cruz matter and a check in the amount of $9,978.09 in connection with the Munoz matter were presented for payment. The bank honored both checks, even though the balance on deposit in the account was insufficient to cover them, leaving a balance of −$22,712.20.

On September 13, 2002, the sum of $155,631.46, of which $90,260 related to the Munoz matter, was deposited into the account to cure the negative balance. None of the deposited sum relates to the De Cruz matter. One or both of the checks honored

by the bank were drawn, in whole or in part, against funds deposited into the account for other matters.

Charge four alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

At the close of business on November 10, 2003, the balance on deposit in the escrow account was $638,104.30. There was no activity in the account on that date.

On November 12, 2003, the account was debited $5,010 for an unpaid deposit item, and 11 checks, totaling $660,127.02, were presented for payment in connection with several separate matters. The bank honored the checks even though the balance on deposit was insufficient to cover them. This resulted in a balance of −$27,032.72.

On November 13, 2003, $319,638.46 was wired into the account by Argent Mortgage Company to cure the negative balance. Inasmuch as the respondent's records do not identify the client to whom the November 13, 2003, deposit was attributable, it is impossible to determine whether the deposited funds related to any of the checks presented for payment on November 12, 2003.

Charge five alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

At the close of business on November 20, 2003, the balance on deposit in the respondent's escrow account was $856,088.65. On November 21, 2003, the sum of $346,047.86 was wired into the account for an unidentified matter and a $15 fee was debited. This brought the balance to $1,202,121.51. Twenty-one checks totaling $1,274,847.86 were presented for payment. The bank honored those checks even though the balance on deposit was insufficient to cover them. This left a balance of −$72,726.35.

On November 22, 2003, two deposits totaling $348,000 were made into the account to cure the negative balance. One of those deposits included $15,000 relating to one of the 21 checks presented for payment on November 21, 2003. One or more of the remaining 21 checks were drawn in whole or part against funds deposited in connection with other matters.

Charge six alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

At the close of business on November 25, 2003, the balance on deposit in the escrow account was $24,420.20. Between November 26, 2003, and November 28, 2003, 15 checks totaling $596,084.38 and relating to several separate matters were presented for payment. The balance dropped to –$383,829.60. The bank returned 11 checks totaling $408,249.80 as unpaid. It honored the remaining 4 checks even though the balance on deposit in the account was insufficient to cover them.

On December 1, 2003, three deposits totaling $1,311.930.30 were made to cure the negative balance. None of the deposited funds related to any of the 15 checks presented for payment between November 26, 2003, and November 28, 2003. One or more of the four checks paid by the bank was drawn in whole or in part against funds deposited in the account with respect to other matters.

Charge seven alleges that the respondent commingled funds entrusted to him as a fiduciary, incident to his practice of law, with his own funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

The respondent routinely used the escrow account for the deposit and disbursement of client funds. By his own accounting, he maintained approximately $150,745 in earned legal fees in that account. The commingled fees were wiped out when the account balance fell below zero on the four occasions set forth in charges three through six.

Charge eight, as amended by stipulation of the parties dated November 21, 2006, alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness as a lawyer by failing to maintain adequate client funds in his escrow account, in violation of Code of Professional Responsibility DR 9-102 (a) and/or DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

The respondent disbursed more funds than he had on deposit in the escrow account relative to one or more of the following matters, totaling approximately $72,857.67:

| Matter | Excess Disbursements |
| --- | --- |
| a) Ghani-Perez | $ 8,200 |
| b) Nova | 14,487.67 |
| c) Poorandott | 8,700 |
| d) Ramcharran-Ramlakan | 5,000 |
| e) Rattan-Nando | 7,000 |
| f) Reyes | 700 |
| g) Rivera-Aveloir | 12,500 |
| h) Singh, Harry-Misir | 9,150 |
| i) Sumner, Carl | 7,120 |

Charge nine, as amended by stipulation of the parties dated November 21, 2006, alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

The respondent provided the Grievance Committee with copies of the fronts of checks dated within the audit period that he claims offset the excess disbursements listed in charge eight. The respondent failed to provide copies of the backs of the checks or deposit slips or any other proof that the checks were deposited into the escrow account. The copies of the checks provided by the respondent relating to the Ghani-Perez, Nova, Poorandott, Singh, and Sumner matters in the preceding charge reflect that the checks were payable to the respondent "as attorney." Notwithstanding that, the bank records reflect that the respondent failed to deposit them into the escrow account at any time during the period of the Grievance Committee's audit.

Charge ten alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

On December 29, 2003, the sum of $192,967 was wired out of the escrow account to the Bank of America on behalf of an unidentified matter. The account was debited a $25 wire fee. On January 6, 2004, that sum was wired back from the Bank of America to the escrow account because there was no loan number or other identifying information in the wire transfer. The account was debited a $15 wire fee.

On January 7, 2004, that sum was once again wired out of the escrow account to the Bank of America. This time, there was a notation that the funds were "F/C [for credit] to Roxann and Sylvia Small Loan 7378936." The account was again debited a $25 wire fee. There were no and/or insufficient funds on deposit relative to the Small matter to cover the wired disbursements.

Through the end of the Grievance Committee's audit period, February 29, 2004, no further funds were deposited into the escrow account relative to the Small matter. All or part of the funds wired to the Bank of America with respect to that matter were drawn against funds on deposit on behalf of other matters.

Charge eleven alleges that the respondent misappropriated funds entrusted to him as fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

On July 2, 2003, the sum of $250,000 was withdrawn from the escrow account via cashier's check payable to Allen Amonte. On July 30, 2003, the respondent transferred $1,200 to his business account at North Fork Bank for his fee in the Amonte matter. At the time of those disbursements, there were insufficient funds, or no funds, on deposit in the escrow account relative to the Amonte matter to cover the disbursements. All or part of the $251,200 disbursed was drawn against funds on deposit in the escrow account for other matters.

Charge twelve alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, and/or failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Between September 26, 2003, and February 11, 2004, the respondent disbursed approximately $274,813.55 from the escrow account in connection with the Ashley matter. At the time those disbursements were made, there were insufficient funds, or no funds, on deposit in the escrow account relative to the Ashley matter to cover the disbursements. Those disbursements were drawn, in whole and/or in part, against funds on deposit in the escrow account in connection with other matters.

Charge thirteen alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness as a lawyer by failing to safeguard funds entrusted to

him as a fiduciary and/or failing to maintain adequate funds in his escrow account, in violation of Code of Professional Responsibility DR 9-102 (a) and/or DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

The respondent admittedly "overwrote," in that he disbursed more funds than he had on deposit in the escrow account, totaling approximately $17,200, relative to the following matters:

| Matter | Amount Overwritten |
| --- | --- |
| a) Ahmed | $850 |
| b) Bacchus | 99.39 |
| c) Bramnarine | 450 |
| d) DelaCruz | 100 |
| e) Etwara | 2,175 |
| f) Feroz | 1,956.45 |
| g) Harrichand | 26.88 |
| h) Kissoon | 653.65 |
| i) Laraque | 80.77 |
| j) London | 122.50 |
| k) Malagon | 950 |
| l) Maniram | 450.85 |
| m) Molines | 2,081.35 |
| n) Munoz | 2,632.10 |
| o) Ramratan | 573.81 |
| p) Ramsaroop | 2,173.49 |
| q) Rodriguez-Robert | 201.28 |
| r) Sawh | 950 |
| s) Sharma | 30 |
| t) Simbhu | 135.31 |
| u) Sing, D. | 493.02 |
| v) Waronowich | 2,000 |

Charge fourteen alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness as a lawyer by failing to promptly pay or deliver to a client or third person all the funds in his possession that the client or third person was entitled to receive, in violation of Code

of Professional Responsibility DR 9-102 (c) (4) and/or DR 1-102 (a) (7) (22 NYCRR 1200.46 [c] [4]; 1200.3 [a] [7]).

The respondent admitted that he failed to disburse all the funds on deposit in the escrow account relative to one or more of the 43 matters enumerated in the charge, totaling $76,586. These sums, with respect to the 43 enumerated matters, ranged from a low of $8 to a high of $2,850.73.

Charge fifteen alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness as a lawyer by failing to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]).

The respondent disbursed checks from his escrow account, totaling approximately $786,016, prior to the time the funds to cover them were deposited into the account with respect to 17 enumerated matters between August 14, 2002, and February 19, 2004. The individual disbursements ranged in size from $967 to $270,217.49.

At the time each of these disbursements was made, there were insufficient funds, or no funds, on deposit in the escrow account relative to the listed matters to cover those disbursements.

Charge sixteen alleges that the respondent breached his fiduciary duty and/or engaged in conduct adversely reflecting on his fitness as a lawyer by failing to promptly pay or deliver to a client or a third person all the funds in his possession that the client or third person was entitled to receive, in violation of Code of Professional Responsibility DR 9-102 (c) (4) and/or DR 1-102 (a) (7) (22 NYCRR 1200.46 [c] [4]; 1200.3 [a] [7]).

The respondent failed to disburse all of the funds on deposit in the escrow account relative to 19 enumerated matters, totaling approximately $183,066.27. The sums which the respondent failed to disburse with respect to these individual matters ranged from a low of $70 to a high of $86,706.66.

Charge seventeen alleges that the respondent failed to maintain required bookkeeping records of an attorney escrow account, in violation of Code of Professional Responsibility DR 9-102 (d) (1) and/or (2) and/or (9) (22 NYCRR 1200.46 [d] [1], [2], [9]).

The opening balance in the escrow account on August 1, 2002, the first day of the Grievance Committee's audit period, was

$320,046.17. The respondent was unable to provide the names of the matters for which he was holding $83,706.36 of that amount or the portion of that sum which he was holding on behalf of each matter. On August 2, 2002, the respondent transferred $509,627.91 into the escrow account, which he stated was the closing balance of his prior escrow account. He was unable to provide the names of the matters for which he was holding that sum or the amount he was holding in connection with each matter.

The final charge emanates from the complaint of Jillian Lord.

Charge eighteen alleges that the respondent engaged in conduct that is prejudicial to the administration of justice and/or reflects adversely on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and/or (7) (22 NYCRR 1200.3 [a] [5], [7]).

Commencing in September 2002 the respondent represented Lord, who was acting as attorney-in-fact for her sister in the sale of a parcel of real property. Subsequent to the sale, Lord filed a complaint against the respondent with the Grievance Committee for the Second and Eleventh Judicial Districts, which was initially transferred to the Queens County Bar Association for investigation, and a claim with the Lawyers' Fund for Client Protection for payment of funds she believed to be due her from the sale.

On or about October 23, 2004, the sum of $94,796 was wired from the respondent's escrow account to the bank account of Lord's sister at Chase Manhattan Bank. The payment was conditioned upon Lord's execution of a general release as attorney-in-fact for her sister wherein she agreed, inter alia, to withdraw her pending complaint and any further complaint with related agencies with respect to this matter.

Based on the stipulation executed by the parties on November 21, 2006, and the evidence adduced, the Special Referee properly sustained all 18 charges. The Grievance Committee's motion to confirm the Special Referee's report is granted and the respondent's cross motion is denied.

In determining an appropriate measure of discipline to impose, the respondent submits that not every escrow violation results in a harsh penalty.

Notwithstanding the respondent's unblemished disciplinary history, the absence of client complaints, his compliance with

the decision and order on motion of this Court dated July 13, 2006, the character evidence presented, and the remedial efforts he has undertaken, the respondent's multiple breaches of his fiduciary duty to insure the integrity of client funds entrusted to him and his long-standing disregard of appropriate escrow precautions constitute serious professional misconduct. In addition to his multiple acts of misappropriation, the respondent conditioned his payment of a fee owed on behalf of a client upon the withdrawal of a complaint. Nor is there any evidence that the medical conditions claimed by the respondent adversely affected his ability to manage his escrow account or caused him to repeatedly and egregiously breach his fiduciary duty during the period under review.

Notwithstanding the respondent's claimed lack of venality, the numerous acts of professional misconduct in which he has engaged warrant his disbarment.

PRUDENTI, P.J., MILLER, SCHMIDT, CRANE and RITTER, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent's cross motion to disaffirm the Special Referee's report and dismiss the charges and, if the court decides to impose public discipline in this matter, to limit any sanction to a public censure is denied; and it is further,

Ordered that, pursuant to Judiciary Law § 90, effective immediately, the respondent, N. Stephen Sukhdeo, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, N. Stephen Sukhdeo, shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,

Ordered that, pursuant to Judiciary Law § 90, effective immediately, N. Stephen Sukhdeo is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself

out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, N. Stephen Sukhdeo, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).